UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KURT WERTZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  No. 2:19-cv-00615-JRS-DLP |
| | ) |
| RICHARD BROWN, | ) |
| | ) |
| Respondent. | ) |

**Order Granting Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Kurt Wertz petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number BTC 18-09-0143. For the reasons explained in this Order, Mr. Wertz's habeas petition is **granted**.

**A.  Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B.     The Disciplinary Proceeding

On September 12, 2018, Indiana Department of Correction (IDOC) Caseworker Wallace wrote a Report of Conduct charging Mr. Wertz with encouraging, directing, commanding, coercing, rioting in violation of the IDOC's Adult Disciplinary Code offense A-103. The Report of Conduct states:

> On September 12, 2018 @ 3:14 pm. I, M. Wallace, caseworker called offender Wertz, Kurt 116758 to caseworker's office. I asked offender Wertz, Kurt DOC 116758, Why would you write these 2 letters? (Showing them to him) Offender Wertz, Kurt said, "Why? What's wrong with them?" I said so you wrote these? And Wertz said "Yes, what about it?" I replied, So you wrote them? Offender Wertz said "Yes, I did". The 2 papers stated at which to Encourage, Direct, command, coercing a riot/disturbance to the order of the facility by participating in a group protest. He was placed in mechanical restrains and escorted by yard staff to the Restricted Housing unit.

Dkt. 10-1 (errors in original).

Mr. Wertz was formally notified of the charge on September 14, 2018, when he received the Screening Report. Dkt. 10-4. He pled not guilty to the charge, did not ask for witnesses, and asked for the "evidenced turned in." *Id.*

A disciplinary hearing was held on September 17, 2018. Dkt. 10-6. The hearing officer considered several items of evidence, the conduct report, and Mr. Wertz's statement. *Id.* The evidence included the two letters Caseworker Wallace referred to in the conduct report:

> If You have a Few Minutes and You're Tired of being Screwed Late Rec/Law Library Lines, or Wearing Your Jumpsuit . . . Make It Known Silence only Protects/Condones Staffs Incompetence[.] Type Into D-Dorms CWM on the J-Pay Informal Grievance on Custody
> (1) Jumpsuits are only Instructed to be worn at 6 AM Count And Leaving the Dormitory. Minimal wear in the DayRoom is a T-Shirt, Shorts, Shower Shoes. A Memo Is Not a "Blanket Order" authority to change/Replace BCF Handbook Rule #18. Furthermore this is Plainly the Language of this Rule for there would be No Need to Attempt to Instruct Jumpsuit wear is 6 AM – 2:PM etc[.] As The Rule #18 is plainly stated at 6 AM Count is Completed You have access to the Dayroom and Minimal Wear in the Dayroom is ???

2

> T-Shirt Shorts and Shower Shoes! All Grievances are Protected by the 1st Amendment and Retaliation violates Policy[.] Remember we missed over 1/2 our Rec on 9-6-18.

Dkt. 1-1; dkt. 10-2 at 1 (errors and ellipsis in original). A second letter states:

> If You have a Few Minute And Youre Tired of being Screwed by Staff by Late Running of The Rec/Law Lib Lines . . . Make It Known !!!
> Silence Only Protects/Condones Staff Incompetence. Get on The JPay Type Into D-Dorms CWM Informal Grievance on Custody Staff Are Delaying our Rec for Personal Practices Rec/Law Lib Staff are Denying us Access to the Law Lib. and Forcing us to go During our Rec Instead of the Facility Established Independent Law Lib Line Running at 7-10AM, 11AM-2:30PM, 3-5:30PM Rec/Law Lib Are Not Either or Rights Allen v City Co. of Honolulu. Emphasis is placed Upon the needs of the Prisoner, Not the Institution where a Irreconcilable Conflict Exist, The Prison Officials Rather than the Prisoner Must Alter Their Practices. Law Lib Policy 00-01-102, Rec 01-03-105
> All Grievances are Protected by the 1st Amendment Retaliation violates Policy Remember 9-6-18 we got less than 1/2 our Rec/Law Lib time!

Dkt. 1-2; dkt. 10-2 at 2 (errors and ellipsis in original).

The evidence also included Mr. Wertz's grievances and emails sent between IDOC officials at the Branchville Correctional Facility. Dkt. 10-3. Mr. Wertz acknowledged that he wrote the two letters but said that it was not him who posted the letters in the dormitory and he did not know who did. Dkt. 10-6.

Based on this evidence, the hearing officer found Mr. Wertz guilty of "encouraging, directing, commanding, coercing, rioting" in violation of offense A-103 of the Adult Disciplinary Process. *Id.* The sanctions imposed included the loss of 180 days of earned credit time and a demotion in credit earning class. *Id.*

Mr. Wertz appealed to the Facility Head and the IDOC Final Reviewing Authority, where both appeals were denied. Dkt. 10-7; dkt. 10-8. Represented by counsel, Mr. Wertz then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Warden has responded, dkt. 10, and Mr. Wertz has replied, dkt. 13.

### C. Analysis

In his petition, Mr. Wertz presents three grounds for habeas corpus relief. Dkt. 1 at 5. First, he argues there is insufficient evidence to support the disciplinary charge. *Id.* at ¶ 22. Second, Mr. Wertz argues that he was disciplined for exercising his First Amendment rights, and therefore the discipline violates the First Amendment. *Id.* at ¶ 23. Third, Mr. Wertz argues that his due process rights were violated because nothing in the IDOC Adult Disciplinary Policy gives fair warning that his actions could be construed as rioting. *Id.* at ¶ 24.

#### 1. Sufficiency of the Evidence

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Mr. Wertz argues that none of his actions violated any of the conduct prohibited by the A-103 offense. To assess this contention, the Court starts with the offense description as defined by the IDOC Adult Disciplinary Procedure:

> Rioting
>
> Encouraging, directing, commanding, coercing, or signaling one (1) or more other persons to participate in a disturbance to facility order caused by a group of two (2) or more offenders, or participating in such a disturbance, or remaining in a group where some members of the group are participating in such a disturbance.

Dkt. 10-9.

For Mr. Wertz to be guilty of violating the "rioting" prohibition, the disciplinary hearing officer must have had "some evidence" that Mr. Wertz (a) either encouraged, directed, commanded, or signaled, (b) one or more other persons, (c) to participate in a disturbance to facility order, (d) caused by two or more offenders. Alternatively, Mr. Wertz could be guilty of rioting if the disciplinary hearing officer had "some evidence" that Mr. Wertz participated in such a disturbance or remained in a group of other persons participating in the disturbance. *Id.*

The Warden argues that the letters written by Mr. Wertz encouraged, directed, commanded, or signaled "a disturbance to facility order by encouraging offenders to submit complaints about his issues." Dkt. 10 at 8. The Warden implicitly suggests that the submission of complaints is a disturbance to the facility's order. *Id.*

But the Warden points to no evidence in the disciplinary record of any disturbance to facility order or, most relevantly, the submission of complaints by other offenders in such numbers to have caused a disturbance to the facility's order. To support his rather bare argument, the Warden first cites to *Carrico v. Zatecky*, No. 2:19-cv-78-JMS-MJD, 2020 WL 95040 at *1–2 (S.D. Ind. Jan. 8, 2020). In *Carrico*, this Court found where an inmate who encouraged other inmates to refuse to leave a recreation pad, sufficient evidence existed to support the hearing officer's decision that the offense was rioting. *Id.* The difference is striking. In that case the offending inmate encouraged an actual group of offenders – thirteen – to disregard correctional officers' orders to leave a recreation pad and return to their cells. *Id.* In the instant case, there is no identified group of other offenders who did anything, and if there were, what they were supposed to do – submit grievances or complaints from a kiosk – was permitted by IDOC policy.

The second case cited by the Warden is *Messer v. Superintendent*, No. 2:14-cv-121-JMS-WGH, 2014 WL 5323810 at *1, *3 (S.D. Ind. Oct. 17, 2014), where this Court again found the hearing officer had sufficient evidence to find a rioting offense had occurred. Inmate Messer, in reaction to a correctional officer's order for a "large group" of inmates to re-queue in a "chow line," yelled for the inmates to "Stand your ground. Stand your ground! They can't lock us all up." *Id.* Again, comparing *Messer* to Mr. Wertz's conduct is not supportive of the Warden's argument. The conduct committed by Messer is no doubt an actual disturbance to facility order while a correctional officer attempted to re-gain control of the large group of inmates. This situation is easily "some evidence" of rioting.

As Mr. Wertz notes in his reply, his letters did not encourage other inmates to do anything in violation of IDOC policy or rules. Dkt. 13. Rather, he urged other inmates to exercise their First Amendment rights to notify facility officials when officers failed to follow policy.

The Warden argues that "facility staff cannot efficiently respond to and address legitimate offender complaints if they are spending their time addressing numerous repetitive complaints submitted at Wertz's urging." Dkt. 10 at 8. But the disciplinary hearing record does not contain any evidence that the facility staff was unable to efficiently process complaints, or that they were burdened by repetitive complaints flowing from Mr. Wertz's letters.

As an attachment to his return, the Warden presents fifty pages of emails and Mr. Wertz's complaints. Dkt. 10-x. He cites to one of the emails in which a prison official wrote that Mr. Wertz filed a complaint every day. Dkt. 10-3 at 3. A brief review of Mr. Wertz's complaints did not reveal frivolous concerns. Recreation time and use of the law library are valuable privileges to an inmate population, and it is understandable that the deprivation of the privileges causes frustration and anger. The proper way to vent the frustration and anger is through making grievances to officials,

6

something the IDOC apparently encourages. But here none of the email responses from or between facility officials contain any assertion, warning, opinion, or complaint that there were too many grievances from inmates, and that staff's attempt to process them was or could disrupt facility order. Rather, the tone of the facility officials' emails is one of irritation and hostility toward Mr. Wertz. It is likely this irritation and hostility was a factor in charging Mr. Wertz with the most serious possible offense in the Adult Disciplinary Procedure.

The Warden's arguments that the hearing officer had "some evidence" to find that Mr. Wertz rioted, as that term is defined in the Adult Disciplinary Process, are without merit. The Court concludes there is a total absence of evidence showing (1) a disturbance to facility order, and (2) that one or more persons participated in a disturbance to facility order caused by a group of two or more offenders. Mr. Wertz's conduct does not fit IDOC's own definition of rioting. Mr. Wertz was thus denied due process of law by IDOC authorities when they deprived him of earned credit time that extended the length of his confinement.

### 2. Fair Warning

In *Crawford v. Littlejohn*, 963 F.3d 681, 683-84 (7th Cir. 2020), the court held that state officials' "reading of a prison regulation" is a matter of state law that cannot be the basis for federal collateral (habeas corpus) relief. It held that the district court erred in interpreting a financial transaction disciplinary offense in a narrow sense not contemplated by the wording of the offense. *Id.* The court noted that "[p]eople of common understanding can see what is forbidden" by the rule. 963 F.3d at 684.

Here, the Court has not re-interpreted the "rioting" definition. Instead, the Court has found that applying IDOC's own definition of the rioting offense, there is no evidence to show Mr. Wertz committed the offense of rioting. People of common understanding, applying the IDOC's wording,

7

would not see that the rioting offense includes advising other inmates of their right to file grievances or suggesting that they do so. To that extent, Mr. Wertz's third ground for habeas corpus relief, arguing that the rioting offense definition did not provide him fair warning that his conduct could be construed as rioting, also has merit. Dkt. 1 at 5, ¶ 24.

### 3. Habeas Corpus Relief

For these reasons, the petition for a writ of habeas corpus, dkt. [1], is **granted**. The Warden is **ordered** to vacate Mr. Wertz's disciplinary conviction in this matter and restore his earned time credits to the level they would be had Mr. Wertz never been convicted of the offense. The Warden shall file a notice of compliance with this Order within **ten days** from the date of this Order.

Because Mr. Wertz has obtained habeas corpus relief on the first and third grounds of his petition, the Court need not address the second ground for relief.

### D. Conclusion

The petition of Kurt Wertz for a writ of habeas corpus challenging IDOC disciplinary case number BTC 18-09-0143, dkt. [1], is **granted**. Within ten days of this Order, the Warden shall file a notice of compliance affirming that he has vacated the disciplinary conviction and restored Mr. Wertz's earned credit time as directed above. Final judgment consistent with this Order shall now enter.

**IT IS SO ORDERED.**

Date: 10/27/2020

_James R. Sweeney_
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

8

Distribution:

Kenneth J. Falk
ACLU of Indiana
kfalk@aclu-in.org

Benjamin Myron Lane Jones
Indiana Attorney General
benjamin.jones@atg.in.gov